IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| VICTORIA GEIST, Mother and Natural Guardian of Keshana Wilson, A Minor, | : : : | CIVIL ACTION |
| Plaintiff, | : : | |
| v. | : : | NO. 11-07532 |
| JASON AMMARY, ET AL., Defendants. | : : | |

# M E M O R A N D U M

**Stengel, J.**                                                                                                                       **December 20, 2012**

This is a § 1983 action against a police officer and the City of Allentown brought by Victoria Geist on behalf of her daughter, Keshana Wilson. Much of the incident was caught on a security tape. The Defendant has filed a motion to dismiss each of the four claims in the complaint. I will grant the motion in part and deny it in part for the reasons set forth in this memorandum.

## I.   Background

Victoria Geist is the mother of Keshana Wilson, who was fourteen years old at the time of the alleged incident and attended Dieruff High School in Allentown, PA. (Compl. at ¶¶ 2, 8). According to the complaint,[1] on Thursday, September 29, 2011, after the students at Dieruff High were dismissed for the day, Defendant Jason Ammary grabbed Ms. Wilson from behind and twisted her around without identifying himself as a police officer. (Compl. at ¶ 8). Officer Ammary allegedly physically abused Ms. Wilson

---

[1] The facts are gleaned from the complaint and are considered in the light most favorable to the Plaintiff.

and made racial slurs during the incident.  He apparently did not seize or touch the two white companions, who were walking with Ms. Wilson.[2]  (Compl. at ¶¶ 7, 9 B, G, L).

The excessive force claim concerns Ammary intentionally firing a Taser at Ms. Wilson.  (Compl. at ¶ 9 F, 29-30).  After she was hit in the groin, Ms. Wilson fell to the ground and attempted to roll on her side to keep from pressing the Taser barbs further into her abdomen and pelvic area.  (Doc. No. 1 at ¶ 9 G-K).  Defendant forced Ms. Wilson to lie on her stomach and handcuffed her, which pushed the Taser barbs further into her body causing additional pain.  Id.  Ms. Wilson was then transported to the hospital to have the barbs removed.  (Doc. No. 1 at ¶¶ 9 L, 11).

Plaintiff alleges the initial stop was unconstitutional and without probable cause.  (Compl. at ¶¶ 13-15).[3]  She also claims the Defendant filed a false report that embellished the circumstances surrounding the incident.  (Compl. at ¶¶ 20-22).[4]  Apparently, this report was later "impeached" by a video tape.  (Compl. at ¶ 32).[5]  The complaint alleges a Monell claim against the City of Allentown for failure to control a "rogue officer," for

---

[2] Ms. Wilson describes herself as bi-racial.

[3] Ms. Wilson was adjudicated delinquent on the charge of failure to disperse pursuant to 18 Pa C.S. § 5502, a misdemeanor, for the incident that occurred on September 29, 2011.  She was also adjudicated delinquent on criminal charges of Resisting Arrest, Disorderly Conduct, and Pedestrian on a Highway.  Defendant's Motion to Dismiss at 1 (Doc. No. 9).  She was ordered to complete forty (40) hours of community service and attend Aggression Replacement Training.  Id.  She was charged with, but not adjudication delinquent on, charges of aggravated assault, simple assault, and riot.  Id. at 2.

[4] The Complaint claims that the Defendant wrote a report stating there were hundreds of students blocking the street, that he had to fire the Taser at Ms. Wilson's pelvic area because she was wearing a backpack in front of her, and that there was significant vehicular traffic.  (Doc. No. 1 at ¶¶ 22-23).  Plaintiff also claims that Defendant filed multiple false charges after the incident as a cover-up for firing the Taser.  (Doc. No. 1 at ¶¶ 24-25).

[5] The Complaint alleges that the videotape shows that Ms. Wilson's torso was not covered by a backpack, there were not hundreds of cars or people in the area, and Ms. Wilson had her hands up and was not resisting the officer at the time he stepped away to fire the Taser.  (Doc. No. 1 at ¶¶ 31-32).

providing a Taser to an unqualified officer and for failure to train officers concerning the safe use of Tasers. (Doc. No. 1 at ¶¶ 38-39). The Complaint alleges that the City was on notice that the Defendant was a rogue officer. (Doc. No. 1 at ¶ 41). Ms. Wilson alleges that she suffered pain, emotional distress, and humiliation. (Doc. No. 1 at ¶ 16).

**II.     Standard**

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted examines the legal sufficiency of the complaint.[6] Conley v. Gibson, 355 U.S. 41, 45-46 (1957). The factual allegations must be sufficient to make the claim for relief more than just speculative. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). In determining whether to grant a motion to dismiss, a federal court must construe the complaint liberally, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. Id.; see also D.P. Enters. v. Bucks County Cmty. Coll., 725 F.2d 943, 944 (3d Cir. 1984).

The Federal Rules of Civil Procedure do not require a plaintiff to plead in detail all of the facts upon which she bases her claim. Conley, 355 U.S. at 47. Rather, the Rules require a "short and plain statement" of the claim that will give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. Id. The "complaint must allege facts suggestive of [the proscribed] conduct." Twombly, 550 U.S. at 564. Neither

---

[6] In deciding a motion to dismiss, the Court should consider the allegations in the complaint, exhibits attached to the Complaint, and matters of public record. See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993). The Court may also consider "undisputedly authentic" documents when the plaintiff's claims are based on the documents and the defendant has attached copies of the documents to the motion to dismiss. Id. Plaintiff has included a surveillance tape of the incident, which I will consider in my analysis of the motion to dismiss.

"bald assertions" nor "vague and conclusory allegations" are accepted as true. See Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997); Sterling v. Southeastern Pennsylvania Transp. Auth., 897 F. Supp. 893 (E.D. Pa. 1995). The claim must contain enough factual matters to suggest the required elements of the claim or to "raise a reasonable expectation that discovery will reveal evidence of" those elements. Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (quoting Twombly, 550 U.S. at 556).

"In deciding motions to dismiss pursuant to Rule 12(b)(6), courts generally consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim." Lum v. Bank of Am., 361 F.3d 217, 222 (3d Cir. N.J. 2004) (citing In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997); Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

### III.   Discussion

This is a §1983 civil rights claim.[7]  To prevail in an action under § 1983, a plaintiff must demonstrate: (1) a violation of a right secured by the Constitution or laws of the United States, and (2) that the alleged deprivation was committed by a person acting under color of state law. Nicini v. Morra, 212 F.3d 798, 806 (3d Cir. 2000); Moore v. Tartler, 986 F.2d 682, 685 (3d Cir. 1993). "Action under color of state law

---

[7] 42 U.S.C. § 1983 states, "Every person who, under color of any statute, ordinance, regulation, custom, or usage . . . subjects, or causes to be subjected, any citizen . . . or any other person . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." City of Monterey v. Del Monte Dunes, 526 U.S. 687, 749 n.9 (1999) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)).

4

'requires that one liable under § 1983 have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" Harvey v. Plains Twp. Police Dep't, 635 F.3d 606, 609 (3d Cir. 2011) (quoting Abbott v. Latshaw, 164 F.3d 141, 146 (3d Cir. 1998)).

    A. Count I: No Probable Cause to Initiate Police Contact or False Arrest

Ms. Wilson was cited for a summary offense and was adjudicated delinquent on a charge of failure to disperse.[8] She contends that Defendant Ammary embellished the facts supporting the arrest, for which he had no probable cause, in order to justify his use of the Taser.[9]

Plaintiff's many collateral arguments dodge the question of whether this was a valid arrest.[10] She contends the Defendants breached the "confidentiality" of juvenile proceedings by referring to Ms. Wilson's adjudications in their pleadings. She asserts

---

[8] Plaintiff states that the criminal charge of pedestrian on a highway under 75 Pa. C.S. § 3544 is a summary offense, under which Ms. Wilson was arrested. As a note, Courts do not allow warrantless arrests for summary offenses such as underage drinking or the violation of an open container ordinance. See Commonwealth v. Bullers, 536 Pa. 84, 637 A.2d 1326, 1328-29, n.2 (Pa. 1994). However, Ms. Wilson was also charged with a misdemeanor offense pursuant to 18 Pa. C.S. § 5502, under which Officer Ammary had the right to take Ms. Wilson into custody.

[9] Plaintiff claims false arrest under the Fourth and Fourteenth Amendments. Plaintiff cannot bring a Fourteenth Amendment claim under these circumstances, since the Fourteenth Amendment due process claim alleges the same violations as the Fourth Amendment claim. The Fourth Amendment-the more specific form of relief-is the proper vehicle for this claim. See Quales v. Borough of Honesdale, 2011 U.S. Dist. LEXIS 80067, 13-14 (M.D. Pa. July 22, 2011)

[10] § 5502. Failure of disorderly persons to disperse upon official order states:

> Where three or more persons are participating in a course of disorderly conduct which causes or may reasonably be expected to cause substantial harm or serious inconvenience, annoyance or alarm, a peace officer or other public servant engaged in executing or enforcing the law may order the participants and others in the immediate vicinity to disperse. A person who refuses or knowingly fails to obey such an order commits a misdemeanor of the second degree.

18 Pa. C.S. § 5502.

that an adjudication is not a conviction and would not "estop" the claim of false arrest.[11] She even ventures to challenge the constitutionally of the statute in question as "void for vagueness."[12]

I will grant Defendants' Motion to Dismiss Plaintiff's false arrest claim. Ms. Wilson's conviction is dispositive.[13] To maintain a false arrest claim, a plaintiff must

---

[11] Initially, there is no evidence of a confidentiality agreement and the Juvenile Court has previously released Plaintiff's record to Defendants. Further, Plaintiff's claim that 42 Pa.C.S. § 6354 prevents Defendants from using the delinquency adjudication to estop the Plaintiff's claims of false arrest and malicious prosecution is incorrect. 42 Pa.C.S. § 6354 limits the ways in which the disposition of a juvenile can be used "against him." In this case, the Defendants merely seek to protect themselves from a claim of false arrest, which must be dismissed based upon the fact that the Ms. Wilson was, in fact, found guilty. See Lynn v. Schertzberg, 169 Fed. Appx. 666, 670 (3d Cir. Pa. 2006).

Under Pennsylvania law, a party must establish the following elements to invoke the defense of collateral estoppel: (1) The issue decided in the prior action is identical to one presented in the present action; (2) The prior action resulted in a final judgment on the merits; (3) The party against whom collateral estoppel is asserted was a party to the prior action, or is in privity with a party to the prior action; and (4) The party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior action. Jones v. UPS, 214 F.3d 402, 405 (3d Cir. 2000). Under the Pennsylvania Juvenile Act, a court which finds beyond a reasonable doubt that a child committed a criminal act is authorized to enter a finding of delinquency on the record and determine whether the child is in need of treatment, supervision, or rehabilitation. 42 Pa. C.S.A. § 6341(b). Here, Plaintiff was adjudicated delinquent on the charges, received a sentence, and did not appeal, which satisfies the test for collateral estoppel. A criminal judgment is deemed final for purposes of res judicata or collateral estoppel in a related civil case unless and until it is reversed on appeal. See State Farm Fire & Cas. Co. v. Bellina, 264 F. Supp. 2d 198, 207 (E.D. Pa. 2003); Shaffer v. Smith, 543 Pa. 526, 673 A.2d 872, 874 (Pa. 1996). See also Ehly v. City of Philadelphia, 2004 U.S. Dist. LEXIS 23089 (E.D. Pa. Nov. 9, 2004) (holding that juvenile who has entered an admission of guilt in delinquency proceedings should be precluded from bringing a later civil cause of action inconsistent with the admission).

[12] Defendants claim that Plaintiff and Ms. Wilson lack standing to challenge the constitutionality of the statute because there was no appeal of the adjudication of delinquency at all, let alone on the grounds that the statute was void for vagueness. I agree with Defendants. Additionally, "in order to recover damages for an allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, …or declared invalid by a state tribunal authorized to make such determination. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983." Heck v. Humphrey, 512 U.S. 477, 114 S. Ct. 2364, 129 L. Ed. 2d 383, 496-87 (1994). Thus, when a Plaintiff seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. Id. Finally, even if the statute were determined to be unconstitutional, it would not change the actions of Officer Ammary in relying on the statute when making the arrest. Thus, I find Plaintiff's arguments entirely unpersuasive.

[13] As a note, Plaintiff did not include a malicious prosecution claim in her Complaint, but addressed whether it should be dismissed in her response in opposition to Defendants' motion to dismiss. In the response, Plaintiff "offered" to file an amended complaint adding the claim. This would be futile as the malicious prosecution claim

show that the arresting officers lacked probable cause to make the arrest.  Probable cause is "defined in terms of facts and circumstances 'sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense.'" Gerstein v. Pugh, 420 U.S. 103, 111 (1975); Sharrar v. Felsing, 128 F.3d 810, 817 (3d Cir. 1997). Probable cause need only exist as to any offense that could be charged under the circumstances.  Graham v. Connor, 490 U.S. 386, 393, n.6, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989).  Pennsylvania follows the Restatement of Torts § 667(1) position that probable cause is conclusively established where there is a guilty plea or conviction, even if later overturned.  Tarlecki v. Mercy Fitzgerald Hosp., No. 01-1347, 2002 U.S. Dist. LEXIS 12937 at 11, 2002 WL 1565568 (E.D. Pa. 2002) (citing McGriff v. Vidovich, 699 A.2d 797, 799-800 (Pa. Commw. Ct. 1997)).  Probable cause in the context of a § 1983 unlawful arrest claim is conclusively established by the Plaintiff's guilty plea or conviction, although not where the conviction is later overturned.  Howard v. Yock, No. 97-3102, 1998 U.S. Dist. LEXIS 6741 at 5, 1998 WL 227226 (E.D. Pa. 1998); Montgomery v. De Simone, 159 F.3d 120, 125 (3d Cir. 1998) (holding that the Restatement approach to probable cause contravenes the policies of the Civil Rights Act where the underlying conviction has since been overturned).

    Ms. Wilson was adjudicated delinquent on the charged conduct giving rise to the arrest. This alone is sufficient to show that the officer had "some reasonable basis to believe [she] had committed a crime." Barna v. City of Perth Amboy, 42 F.3d 809, 819

---

should be dismissed for the same reasoning as the false arrest claim. See Ehly v. City of Philadelphia, 2004 U.S. Dist. LEXIS 23089, 10-11 (E.D. Pa. Nov. 9, 2004).

(3d Cir. 1994). Therefore, the arrest is justified as being made with probable cause, and I will grant the motion to dismiss as to the count of false arrest. Id. See also Lynn v. Schertzberg, 169 Fed. Appx. 666, 670 (3d Cir. Pa. 2006) (Plaintiff's false arrest and false imprisonment claims must fail because he was convicted of the charge against him).

B. Count II: Retaliatory Filing of Charges

Plaintiff claims that Defendant Ammary attempted to cover up his use of the Taser by "filing unfounded and additional charges" against Ms. Wilson. (Compl. at ¶¶ 20-21). Plaintiff alleges that these charges were filed without probable cause in violation of the Fourth and Fourteenth Amendment.[14] (Compl. at ¶ 25).

Plaintiff relies on the case Vasquez v. Hillery, 474 U.S. 254 (1986) for the proposition that the claim of retaliatory filing of felony-like charges does exist. In Vasquez, the defendant was previously convicted of first-degree murder. After numerous appeals and a habeas petition, the United States Supreme Court held that where there was a systematic exclusion of blacks from the indicting grand jury, the theory that the accused's conviction after a fair trial purged any taint attributable to the indictment process could not be sustained. Vasquez, 474 U.S. at 257-66. The Court also discussed the effect of discriminatory composition of a grand jury on a habeas petition. Id. Plaintiff cites this case for the broad proposition that "an impermissible and

---

[14] The Supreme Court has held that when government behavior is governed by a specific constitutional amendment, due process analysis is inappropriate. United States v. Lanier, 520 U.S. 259, 272 n.7 (1997); Graham v. Connor, 490 U.S. 386, 394 (1989). Therefore, I will proceed only under the Fourth Amendment analysis because "the constitutionality of arrests by state officials is governed by the Fourth Amendment rather than due process…" Berg v. County of Allegheny, 219 F.3d 261, 268-69 (3d Cir. 2000).

unconstitutional procedure would not be condoned by the subsequent conviction in criminal court." (Doc. No. 19 at 21).

Vasquez was a habeas petition, involving a challenge to the all-white composition of a grand jury. Here, Plaintiff is challenging the "unsupported charges" allegedly filed as a cover-up for Defendant Ammary's behavior. The fact that Ms. Wilson was found delinquent on the four charges suggests the claims were well-supported and demonstrates a sufficient basis for the filing of the "felony-like" charges. Vasquez does not support a claim that a cause of action for retaliatory filing of felony-like charges exists. Plaintiff has cited no case indicating that any court has ever recognized such a cause of action. Count II will be dismissed.

C. Count III: Excessive Use of Force

Plaintiff claims that Defendant Ammary violated Ms. Wilson's Fourth, Fourteenth and Eighth Amendment rights by his excessive use of force.[15] Plaintiff alleges that the use of the Taser on a fourteen-year-old girl during an arrest, as well as Officer Ammary's decision as to where to shoot the Taser is evidence that the force was "excessive." Here,

---

[15] The Defendants also argue that Plaintiff's excessive force claim brought pursuant to the Eighth Amendment should be dismissed. Plaintiff's claim of excessive force arises in the context of an arrest, not the actions of prison officials or officers. In other words, a Plaintiff may only bring an Eighth Amendment claim where he has been convicted and is in prison to serve a sentence. Boring v. Kozakiewicz, 833 F.2d 468, 471 (3d Cir. 1987). Under those circumstances, the claim is properly addressed by the Fourth Amendment. The Eighth Amendment, therefore, does not apply to this case. The Fourteenth Amendment also does not provide an independent source for this claim, and should be dismissed. The United States Court of Appeals for the Third Circuit has noted that courts should apply the Due Process Clause of the Fourteenth Amendment to protect pretrial detainees from excessive force. See Brown v. Borough of Chambersburg, 903 F.2d 274, 278 (3d Cir. 1990) (Fourteenth Amendment applies when plaintiff is a pretrial detainee). As Plaintiff is not in prison or a pretrial detainee, I will proceed on the analysis of excess force under the Fourth Amendment only.

The analysis of Plaintiff's Fourth Amendment claim is a three-step one. First, I must determine whether Ms. Wilson was seized under Fourth Amendment jurisprudence. If so, I will determine whether that seizure was unreasonable. Finally, if there was a Fourth Amendment violation, I must determine which of the Defendants, if any, may be held liable for it. See Berg, 219 F.3d at 269.

the Defendants do not dispute that the arrest was a seizure; rather, they argue that Officer Ammary did not, as a matter of law, use an unreasonable amount of force to effect that seizure. The Defendant argues that the use of a Taser was objectively reasonable as a matter of law because Ms. Wilson was charged and found delinquent on the charge of resisting arrest, which automatically warrants the use of force.  (Doc. No. 8 at 5[16]). Defendant also disputes any injury.  Id.

Use of excessive force by a law enforcement officer is considered a "seizure" under the Fourth Amendment.  Graham v. Connor, 490 U.S. 386, 395 (1989); Tennessee v. Garner, 471 U.S. 1, 7 (1985).  The test is an objective one, which scrutinizes the reasonableness of the challenged conduct.  Carswell v. Borough of Homestead, 381 F.3d 235, 240 (3d Cir. 2004).  The facts to be examined include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officer or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham, 490 U.S. at 396.  Other considerations may include "the possibility that the persons subject to the police action are violent or dangerous, the duration of the action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time."  Id.  Reasonableness is to be evaluated from the "perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."  Id.;

---

[16] Defendant's Motion to Dismiss Plaintiff's Complaint Pursuant to Fed. R. Civ. P. 12(b)(6).

10

Couden v. Duffy, 446 F.3d 483, 497 (3d Cir. 2006) (quoting Sharrar v. Felsing, 128 F.3d 810, 822 (3d Cir. 1997)).

The application of a Taser may be a reasonable use of force. Woods v. Grant, 665 F.Supp.2d 438, 445 (D.Del. 2009). Taser cases within the Third Circuit do not establish bright-line rules of law, but rather reflect the fact-sensitive nature of any determination of reasonableness of the use of a Taser on a person. See Reiff v. Marks, 2011 U.S. Dist. LEXIS 18205 (E.D. Pa. Feb. 23, 2011). In cases dealing with Taser use, the deployment was generally deemed reasonable where the use was necessary to overcome a suspect's resistance to arrest because the Plaintiff attempted to flee, appeared to threaten officer safety, or was either armed or suspected to be armed. Id. at 19-20, n. 97.

Plaintiff points to several facts to consider in determining whether the complaint is sufficient to state a cause of action against Defendants including: 1) Ms. Wilson's age; 2) the fact that Officer Ammary grabbed Ms. Wilson from behind; and 3) Ms. Wilson's reactive flailing as opposed to intentional striking. Plaintiff also argues that Ms. Wilson surrendered any alleged resistance when she saw the Taser and, in fact, put her hands over her head.

Ms. Wilson was adjudicated delinquent on the charge of resisting arrest. This adjudication means the officer was justified in using "substantial force."[17] Lora-Pena v. F.B.I., 529 F.3d 503, 506 (3d Cir. 2008) ("Under Pennsylvania law, to convict the plaintiff [of resisting arrest], the jury had to find that the officer involved was justified in

---

[17] A conviction for resisting arrest does not necessarily preclude an arrestee for recovering damages on a § 1983 excessive force claim. Nelson v. Jashurek, 109 F.3d 142, 145-46 (3d Cir. 1997).

using substantial force."). Even though Officer Ammary had probable cause to arrest Ms. Wilson, he was still constrained to use only the level of force which was reasonable to bring Ms. Wilson into custody. The fact that Ms. Wilson was acting in an unruly manner factors into the totality of the circumstances. Her behavior may have justified a greater use of force than would have been reasonable had Ms. Wilson been cooperative. However, Ms. Wilson's behavior does not dispense with the reasonableness requirement altogether. See e.g., Green v. N.J. State Police, 246 Fed. Appx. 158 (3d Cir. 2007) (finding that Plaintiff's admission that during the struggle he came "in contact either by striking or kicking two of the officers," would not, as a matter of logic, necessarily conflict with a finding of excessive force); Gibson v. Mueller, 2012 U.S. Dist. LEXIS 44853 (D.N.J. Mar. 29, 2012) (finding that even where certain facts as alleged in Plaintiff's § 1983 claim contradict facts found in support of Plaintiff's state court conviction, they do not necessarily undermine Plaintiff's allegation in the § 1983 case that the officers used unreasonable force). Likewise, the absence of physical injury does not necessarily signify that the force has not been excessive. Rather, it is simply one of the circumstances to be considered under the objective reasonableness standard. Gulley v. Elizabeth City Police Dep't, 340 Fed. Appx. 108, 110 (3d Cir. 2009).

Notably, the video tape I considered in my analysis contains gaps in the recording. Although the Court will not make inferences in Plaintiff's favor that are contradicted by the videotape, there is a notable gap, among others, at the outset of the contact between Ms. Wilson and Officer Ammary. Given the facts in the Complaint and the lack of evidence pertaining to the initial contact between Ms. Wilson and Defendant Ammary, I

cannot conclude on a motion to dismiss, that Defendant Ammary's actions were objectively reasonable under the circumstances. However, in order to ultimately succeed on the excessive force claim, the Plaintiff must show that the officer's actions were unreasonable in light of the circumstances of the arrest. See Kopec v. Tate, 361 F.3d 772, 776-77 (3d Cir. 2004).

   D. Count IV: Failure to Control a Rogue Officer

The Supreme Court determined in Monell v. New York City Department of Social Services, 436 U.S. 658, 692 (1978), that a municipality or other local government may be subject to liability under § 1983. But local governments "are responsible only for their own illegal acts"; they cannot be held vicariously liable under § 1983 for their employees' actions. Connick v. Thompson, 131 S. Ct. 1350, 1359 (2011). Therefore, to establish municipal liability under § 1983, a plaintiff must prove that "action pursuant to official municipal policy" caused her injury. Monell, 436 U.S. at 691. "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." Connick, 131 S. Ct. at 1359.

In limited circumstances, a supervisor can be liable under § 1983 in his or her individual capacity for failure to train.[18] City of Canton, Ohio v. Harris, 489 U.S. 378,

---

[18] There are two theories of supervisory liability under which a plaintiff can sue a municipal defendant. See A.M. v. Luzerne County Juvenile Det. Ctr., 372 F.3d 572, 578 (3d Cir. 2004). Under the first theory, defendants can be sued as policy-makers "if it is shown that such defendants, 'with deliberate indifference to the consequences, established and maintained a policy, custom, or practice which directly caused [the] constitutional harm.'" Id. (citing Stoneking v. Bradford Area Sch. Dist., 882 F.2d 720, 725 (3d Cir. 1989)). The second theory provides for personal liability if Plaintiffs can show that a supervisor participated in or directed others to violate their constitutional rights, or that he had knowledge of and acquiesced in his subordinates' violations. Andrews v. City of Philadelphia, 895 F.2d 1469, 1478 (3d Cir.1990)). The Plaintiff is not alleging the City of Allentown was personally involved in the incident or

13

387 (1989).[19]  Under this theory of liability, the plaintiff must show that the alleged "failure to train amounts to deliberate indifference to the rights of persons with whom the [untrained persons] come into contact." Id. at 388; Stoneking v. Bradford Area Sch. Dist., 882 F.2d 720, 725 (3d Cir. 1989) (policymakers may be liable under § 1983 if they, with "deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm"). However, "[t]he scope of failure to train liability is a narrow one." Brown v. Muhlenberg Tp., 269 F.3d 205, 215 (3d Cir. 2001).

The Plaintiff must do more than argue that the "constitutionally cognizable injury would not have occurred if the superior had done more than he or she did." Sample v. Diecks, 885 F.2d 1099, 1118 (3d Cir. 1989). The Plaintiff must specifically identify what the superior failed to do that shows his or her deliberate indifference. Id. "Only in the context of a specific defalcation on the part of the supervisory official can the court assess whether the official's conduct evidenced deliberate indifference and whether there is a close causal relationship between the 'identified deficiency' and the 'ultimate injury.'" Id.

---

directed the police to use excessive force. The allegation is that the City failed to train and to supervise officers under its control in deliberate indifference to the constitutional rights of affected citizens. See e.g., Davis v. Lower Merion Twp., 1995 U.S. Dist. LEXIS 6801, 1995 WL 311805, *3 (E.D.Pa. May 18, 1995) (citing Sample v. Diecks, 885 F.2d 1099, 1116-18 (3d Cir.1989)).

[19] In City of Canton, the Court described a police officer's decision to use deadly force when chasing a fleeing suspect as an example of a situation in which a need for training is "so obvious" in light of the duties assigned to a police officer. 489 U.S. at 390 n.10. Because city policy makers know to a "moral certainty" that police officers will be required to arrest fleeing felons, the need to train police officers in the constitutional restrictions on the use of deadly force is so apparent that the failure to do so can be characterized as deliberate indifference. Id. Here, the use of Tasers by officers in the field is not dissimilar from Canton.

Under the deliberate indifference standard, for a supervisor to be liable for failure to train his or her subordinates, the plaintiff must (1) identify the specific supervisory practice or procedure that the supervisor failed to employ, and show that (2) the existing custom and practice without the identified, absent custom or procedure created an unreasonable risk of the ultimate injury, (3) the supervisor was aware that this unreasonable risk existed, (4) the supervisor was indifferent to the risk; and (5) the underling's violation resulted from the supervisor's failure to employ that supervisory practice or procedure.[20] Brown, 269 F.3d at 216 (citing Sample, 885 F.2d at 1118).

In other words, the plaintiff must show "both contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents and circumstances under which the supervisor's actions or inaction could be found to have communicated a message of approval to the offending subordinate."[21] Montgomery, 159 F.3d at 127. However, "[a] single constitutional violation can still provide the basis for municipal liability for failure to train, . . . but only where the 'need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights' that the policymaker's inaction amounts to deliberate indifference." Christopher v. Nestlerode, 240 F. App'x. 481, 489-90 (3d Cir. 2007) (quoting Canton, 489 U.S. at 391).

In the Complaint, Plaintiff alleges the following:

---

[20] Additionally, "where a supervisor with authority over a subordinate knows that the subordinate is violating someone's rights but fails to act to stop the subordinate from doing so, the factfinder may usually infer that the supervisor 'acquiesced' in (i.e., tacitly assented to or accepted) the subordinate's conduct." Montgomery v. De Simone, 159 F.3d 120, 127 (3d Cir. 1998); Bonenberger v. Plymouth Twp., 132 F.3d 20, 25 (3d Cir. 1997).

[21] A plaintiff can demonstrate deliberate indifference by showing that the failure to train has "caused a pattern of [constitutional] violations." See Berg, 219 F.3d at 276 (citing Bd. of Cnty. Comm'rs of Bryan Cnty. Okla. v. Brown, 520 U.S. 397, 408-09 (1997)).

15

> 38.   At all relevant times the Defendant, City of Allentown, gave the Defendant, Ammary, a Taser, despite actual notice that the Ammary was not a candidate for using a taser [sic] because of his propensity to use excessive force against the public.
> 39.   At all times herein relevant Defendant, City of Allentown, intentionally, purposefully, and knowingly, had a policy, practice, regulation or custom of giving minimal training about the usage of the taser [sic], especially on a non-violent female minor.
> 40.  At all times herein relevant the policy of the Defendant, City of Allentown, practice, regulation or custom caused Plaintiff to be subject to arrest and abuse by Defendant, Jason Ammary.
> 43. The Defendant, City of Allentown, failed to use adequate training before issuing a taser [sic] to Defendant, Ammary.

I find these allegations sufficient to survive the instant motion to dismiss. If Plaintiff can prove that Defendant had policies or customs that condoned the use of excessive force in effectuating seizures of suspects, the municipality could be liable.  Plaintiff identifies a "policy and practice" which potentially constitutes deliberate indifference to the constitutional rights of citizens, namely, failing to create a policy or train officers regarding proper Taser gun use and deployment.  Likewise, if the Plaintiff can prove that the municipality did not provide training to police officers on procedures to avoid the use of excessive force in arresting suspects, she could prevail on her excessive-force claim. These allegations are not merely a recitation of the elements of a Monell claim, but point towards specific failings in training that led to the specific violation of constitutional rights here alleged. Plaintiff is entitled to discovery to determine whether her allegations

of inadequate training and corrupt policy are true. The court will therefore deny the motion on this point.

    E.  Qualified Immunity

The Defendants also move to dismiss the claims against Officer Ammary on the grounds that he is entitled to qualified immunity.[22] Under the doctrine of qualified immunity, government officials are immune from suit for damages where their conduct did not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). Qualified immunity protects government officials whether they have made a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact. Id. To determine whether qualified immunity applies, a court must examine "whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right" and "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." Id. at 232. A court may exercise its discretion in choosing which prong to address first, considering the circumstances of the particular case. Id. at 236. Additionally, the Third Circuit has warned that "it is generally unwise to venture into a qualified immunity analysis at the pleading stage as it is necessary to develop the factual record in the vast majority of cases." Newland v. Reehorst, 328 F. App'x 788, 791 n.3 (3d Cir. 2009).

---

[22] A defendant bears the burden of establishing his entitlement to qualified immunity. See Harlow v. Fitzgerald, 457 U.S. 800, 808 (1982); see also Thomas v. Independence Twp., 463 F.3d 285, 289 (3d Cir. 2006) (stating that it "continue[s] to stand by established precedent that recognizes that a plaintiff has no pleading burden to anticipate or overcome a qualified immunity defense").

17

"A decision on qualified immunity will be premature when there are unresolved disputes of historical facts relevant to the immunity analysis." Curley v. Klem, 298 F.3d 271, 278 (3d Cir. 2002). Here, the gaps in the video along with the parties opposing contentions of the facts of the arrest are sufficient to make a decision on qualified immunity premature. As discussed above, the Court finds that Plaintiff alleged sufficient facts at the motion to dismiss stage of the litigation to demonstrate that Ms. Wilson's Fourth Amendment rights may have been violated when the Defendant stopped and arrested her. Moreover, a reasonable law enforcement officer should know that an "excessive use[] of a Taser stun[] to effectuate an arrest would constitute a Fourth Amendment violation." Gorman v. Warwick Twp., No. 10-cv-6760, 2011 U.S. Dist. LEXIS 35809, 2011 WL 1235198, at *9 (E.D. Pa. Apr. 1, 2011). Accordingly, Officer Ammary is not entitled to qualified immunity at this time but may raise the defense on a later motion or at trial.

## IV. Conclusion

For the reasons set forth above, I will grant in part and deny in part Defendants' Motion to Dismiss.

An appropriate Order follows.