IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| VICTORIA GEIST, Mother and | : | CIVIL ACTION |
| Natural Guardian of Keshana Wilson, | : | |
| A Minor, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | NO. 11-07532 |
| | : | |
| JASON AMMARY, ET AL., | : | |
| Defendants. | : | |

<u>M E M O R A N D U M</u>

Stengel, J.                                                    October 6, 2014

 This § 1983 case stems from the tasing of a teenager by a school police officer. Presently before the court is a motion for reconsideration of my decision to quash a post-discovery subpoena for Carissa Thomas, a non-party to this action. Ms. Thomas witnessed the events leading up to the tasing incident. An explanation of the procedure of this case will put this motion in context.

## I. PROCEDURAL HISTORY

 The complaint in this action was filed almost three years ago.[1] From the beginning, the relationship between the parties was contentious and several discovery disputes arose. The discovery disputes were referred to the Honorable Magistrate Judge Perkin for resolution. Fact discovery was to be completed by July 12, 2013.[2] After I conferred with counsel, this discovery deadline was later extended to September 20,

---

[1] <u>See</u> Doc. No. 1.

[2] <u>See</u> Doc. No. 42.

2013.[3] Expert discovery was due by December 20, 2013, and dispositive motions were due January 24, 2014.[4]

On August 22, 2013, the defendants filed a motion to compel the deposition of Carissa Thomas, a non-party to this action but an eyewitness witness to the tasing and the events leading up to the tasing. According to the motion to compel, Ms. Thomas had previously been served a subpoena *ad testificandum* on June 13, 2013 for a deposition on June 26, 2013. She did not attend the deposition.[5] The defendants claim they attempted to contact Ms. Thomas by phone, but she did not return their calls. This motion to compel was unopposed by the plaintiff at that time. This motion was referred to Judge Perkin, since he was handling the outstanding discovery disputes.

On September 27, 2013, I held a status conference with counsel for the parties during which the parties indicated that there was an unopposed motion to compel the deposition of Ms. Thomas. At that time Judge Perkin was still working to resolve the parties' discovery disputes, including the motion to compel.[6] The defendants gave no indication that these outstanding disputes would prevent them from filing dispositive motions by the scheduled deadline.[7]

---

[3] See Doc. No. 59.

[4] See id.

[5] According to Samantha Effting, another witness in this matter, Ms. Thomas was aware of the deposition but was scheduled to work on the day of the deposition. See Memorandum of Law in Support of Defendant's Motion to Compel Deposition of Carissa Thomas, Doc. No. 60 at 1.

[6] See Doc. No. 61 and 62.

[7] Their actions implied that the information at issue in the discovery disputes was not pertinent to the motion for summary judgment.

On January 17, 2014, ahead of the dispositive motion schedule, the defendants filed a motion for summary judgment.[8] The briefing on that motion was completed in February. On March 13, 2014, Judge Perkin entered an order denying the motion to compel Ms. Thomas' deposition because the defendants had not served Ms. Thomas with the motion to compel.[9] The defendants did not seek a reconsideration of this decision nor did they attempt to re-serve Ms. Thomas.

On August 22, 2014, I denied the defendants' motion for summary judgment on all claims, finding that several genuine issues of material fact remained in dispute. On September 5, 2014, the day that a motion for reconsideration on the summary judgment decision was due, the defendants requested an extension until September 12, 2014 to file a motion for reconsideration on the motion for summary judgment decision.[10]

On September 5, 2014, the plaintiff also filed a motion to quash a post-discovery subpoena for Ms. Thomas to appear at a deposition. It is unclear whether this subpoena was actually served on Ms. Thomas.[11] The plaintiff had received notice on August 25, 2014 of a subpoena to be served on Ms. Thomas requesting her to appear at a deposition on September 11, 2014 at 4:30 p.m. The plaintiff argued that this subpoena appeared to

---

[8] See Doc. No. 65.

[9] See Doc. No. 71.

[10] See Doc. No. 77. I granted this extension out of fairness to the defendants, though the defendants gave little reason why an extension was needed.

[11] See Doc. No. 78. According to the defendants' motion for reconsideration, "[t]he process server tasked with serving that subpoena reported that Ms. Thomas had moved from her previous home, but that neighbors reported someone came by on a regular basis to collect the mail. A copy of the subpoena was left on the door." Defendants' Memorandum in Support of Defendants' Motion for Reconsideration of the Court's September 9, 2014 Order Granting Plaintiff's Motion to Quash Subpoena, Doc. No. 81 at 3. The plaintiff was also forwarded the subpoena without proof of service. See Doc. No. 78, Ex. A.

be issued in "bad faith" or with an "ulterior motive"—given that it was made the next business day after the defendants' motion for summary judgment was denied and long after the discovery period had run.[12]

On September 8, 2014, I granted the defendant's request for an extension and gave the defendants until September 12, 2014 to file a motion for reconsideration of the summary judgment decision.

On September 8, 2014, I also granted the plaintiff's motion to quash Ms. Thomas' subpoena.[13] I agreed with the plaintiff's arguments that the subpoena was out-of-time. I entered this Order before the defendants could respond to the plaintiff's motion to quash because a response to that motion would not have been due before the deposition was scheduled to be taken.[14] It also appeared from the timing of the subpoena and the defendants' request for an extension that the defendants planned to use information from this deposition as part of their motion for reconsideration. In my view, the testimony would not necessarily change the summary judgment decision. I did not think it worth allowing the deposition to take place when it was scheduled because it would not have

---

[12] The plaintiff argued that the timing of the subpoena, the next business day after the motion for summary judgment was denied, was seen by the plaintiff as an attempt to intimidate her.

[13] When I quashed the subpoena, I also entered a protective order to prevent further subpoenas from being served without prior leave of court. In the plaintiff's view, the defendants' service of these subpoenas may have been used to harass the plaintiff. Given the already contentious nature of this case, I could see this being a possibility and thought a request for leave would help to prevent any harassment that might be possible.

[14] It also wasn't clear when the subpoena had been served on Ms. Thomas and how much notice she had been given to appear for the deposition. The subpoena notice provided to the plaintiff did not indicate that the subpoena had been served.

changed the outcome of the motion for reconsideration.[15] I noted these points in my decision to quash the subpoena.

The defendants never filed a motion for reconsideration of the motion for summary judgment.[16] Instead, they filed this motion for reconsideration of my decision to quash the subpoena of Ms. Thomas.[17]

## II.     STANDARD OF REVIEW

"The purpose of a motion for reconsideration ... is to correct manifest errors of law or fact or to present newly discovered evidence." Max's Seafood Café, 176 F.3d at 677 (quoting Harsco Corp. v. Zlotnicki, 779 F.2d 906, 909 (3d Cir.1985)). "Accordingly, a judgment may be altered or amended if the party seeking reconsideration shows at least one of the following grounds: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion for summary judgment; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." Id. (citation omitted).

---

[15] For example, as I explained in my decision on summary judgment, there were some inconsistencies in Officer Ammary's testimony about why he approached Ms. Wilson shortly before the tasing incident and what information he knew about Ms. Wilson when he first approached her. See Doc. No. 75 at 14 n. 36. This information would play into whether he believed his safety was at risk when he tased Ms. Wilson. I also explained that the determination of certain facts would be ones which would turn on the credibility of Ms. Wilson and Officer Ammary, which a jury would need to assess. See Doc. No. 75 at 15.

While I admit that Ms. Thomas' testimony may be helpful in clarifying some of the details of what happened, any additional facts she could offer would still not resolve all of the factual issues that remain in dispute. I will note that Ms. Thomas' testimony also would have done little to resolve disputed facts regarding the plaintiff's Monell claim.

[16] Though the defendants fail to explain why they never filed this motion though asking for an extension to do so, it would appear from these actions that they intended to use testimony from Ms. Thomas' deposition as part of a motion for reconsideration. They now assert in this motion for reconsideration that the deposition was intended to be taken in order to prepare for trial.

[17] Officer Ammary has also since filed a notice of appeal related to my decision regarding qualified immunity. The Third Circuit stayed that appeal pending the outcome of this motion. See Doc. No. 83.

5

## III.    DISCUSSION

The defendants' issuance of Ms. Thomas' August 25, 2014 subpoena appeared to be tied to an anticipated motion to reconsider the summary judgment decision. The defendants now argue that they should be permitted to depose Ms. Thomas because her testimony will be important at trial. Essentially, the defendants argue that they would be prejudiced if they were not permitted to take Ms. Thomas' deposition.

The defendants imply that their failure to depose Ms. Thomas sooner was the fault of the court. They imply that the court's decision on the motion to compel, which came after their motion for summary judgment had been filed, somehow prejudiced the outcome on their motion for summary judgment. Yet, the fact that the defendants filed their motion for summary judgment without having the benefit of Ms. Thomas' testimony would indicate that they did not believe the disposition of that motion turned on Ms. Thomas' testimony. If her testimony was crucial to their motion, they should have raised that concern with the court before filing their motion.[18] They did not.

Then, once the defendants' "administrative error" in not serving Ms. Thomas with the motion to compel was brought to their attention with Judge Perkin's ruling, the defendants sought no recourse. They did not re-serve Ms. Thomas with a motion to

---

[18] The court extended the discovery deadline in this case because counsel needed more time. Counsel was well aware that the court was amendable to extending deadlines, if warranted.

compel nor bring it to the court's attention that her testimony was necessary for the motion for summary judgment.[19]

The defendants indicate that they waited until after the motion for summary judgment was filed in order to ensure that "the need for Ms. Thomas' testimony was clear." While I appreciate counsel's concern for not expending time and resources unnecessarily, this second subpoena was clearly served long past the time when discovery was due, if it was served at all. While that may have been done for good reason, the lack of communication on counsel's part suggests otherwise.

All that aside, I agree Ms. Thomas' testimony would be relevant evidence at trial.[20] The plaintiff does not contest the fact that her testimony would be relevant. As an eyewitness to the entire interaction between Ms. Wilson and Officer Ammary, Ms. Thomas is an obvious witness. Her deposition should be taken before trial.

## IV.    CONCLUSION

I will permit the defendants to serve a new subpoena on Ms. Thomas.[21] This subpoena should give her at least twenty-one (21) days' notice of this scheduled

---

[19] Though the defendants argue that the service of the subpoena was appropriate because it was made within the discovery deadline, they fail to acknowledge the fact that they waited an additional five months after Judge Perkin's decision on the motion to compel before deciding to depose Ms. Thomas.

[20] In my previous Order quashing the subpoena, I indicated that her testimony would not be relevant with regards to a motion for reconsideration of the summary judgment decision, as I explained in that note and this memorandum. The defendants have construed this point differently.

[21] The defendants have also asked that the plaintiff be compelled to provide them with Ms. Thomas' current address or, in the alternative, should be precluded from presenting testimony of Ms. Thomas and a proper adverse inference instruction be given to the jury. While I expect that the plaintiff will provide what information she has about Ms. Thomas' contact information, I will not assume that she has this information. Ms. Thomas is a third party, and it is not clear what the plaintiff's current relationship is with Ms. Thomas several years after this incident. I see no reason why her inability to provide Ms. Thomas' contact information should require the court to instruct the jury to draw an adverse inference against the plaintiff. Of course, if the plaintiff claims she does not know how to contact Ms. Thomas and then indicates she plans to call her as a witness at trial, after the time for a deposition to be taken has

deposition.[22] Though it should go without saying, the subpoena should be properly served on Ms. Thomas. Plaintiff's counsel should be give reasonable written notice of this deposition so that plaintiff's counsel can be present at this deposition. All efforts should be made to schedule the deposition at a time that is convenient for Ms. Thomas, who is still believed to be a minor and may still be in school. If Ms. Thomas does not appear at the scheduled deposition, the defendants may then file a motion to compel her deposition. This motion should also be properly served on Ms. Thomas.[23]

An appropriate Order follows.

---

passed, that would be a different story. But there is no indication at this time that this is the plaintiff's intent. For these reasons, I will deny the defendants' request on this point at this time. If later the defendants find that the plaintiff has withheld known evidence regarding contact information about Ms. Thomas, the defendants may renew this request for relief.

[22] The defendants' previous subpoenas only gave Ms. Thomas about two weeks' notice. I want to ensure that she has ample notice so that she can either reschedule at a convenient time or rework her schedule so that she can attend the deposition.

[23] If counsel has any questions regarding how to proceed, counsel should contact my chambers.